2021 IL App (2d) 191072-U
No. 2-19-1072
Order filed February 24, 2021

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(l).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Lee County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 16-CF-15 |
| REBECCA S. DIXON, | ) ) | Honorable Jacquelyn D. Ackert, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE SCHOSTOK delivered the judgment of the court.
Justices McLaren and Birkett concurred in the judgment.

**ORDER**

¶ 1   *Held*: Five-year prison sentence upon probation revocation based on alcohol and drug usage was not excessive given (1) following defendant's plea to unlawful delivery of a controlled substance, she was originally placed in drug court, and, despite her drug usage in violation of drug-court conditions, the trial court showed leniency in resentencing her to probation; (2) the factual basis for her plea to unlawful delivery would have supported a conviction of drug-induced homicide, with which she was originally charged; (3) her five-year prison sentence was at the midpoint for unlawful delivery; (4) her criminal record was substantial; and (5) her serious health issues could be adequately addressed at the prison where she was being held.

¶ 2   Defendant, Rebecca S. Dixon, was charged with drug-induced homicide (720 ILCS 5/9-3.3(a) (West 2014)), unlawful delivery of a controlled substance (*id.* § 570/401(d)), and unlawful

possession of a controlled substance (*id.* § 570/402/(c)). She pleaded guilty to the unlawful delivery charge. The State dismissed the remaining charges and defendant agreed to participate in the Lee County drug court program, a form of intensive probation. Later, she voluntarily left the program and was resentenced to four years' probation. Eventually, her probation was revoked, and she was resentenced to five years' imprisonment. On appeal, defendant contends that her sentence is excessive in view of her poor health and her rehabilitative potential. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4    On February 3, 2016, the State filed the three charges against defendant. All were based on the allegation that, on or about November 11, 2015, she delivered less than one gram of a substance containing heroin to Felicia Halstead, who died as a result of ingesting it.

¶ 5    On August 1, 2016, the parties told the court that defendant had agreed to plead guilty to unlawful delivery of a controlled substance and to enter the drug court program. The other charges would be dismissed. The court accepted the agreement and entered judgment accordingly. Among the conditions of the program were that defendant agreed to cooperate with all treatment recommendations; to attend all counseling sessions and treatment programs; not to possess or consume any alcohol or illegal drugs; and to submit to requested testing for prohibited substances.

¶ 6    On April 19, 2017, defendant appeared with her probation officer, Kelly Dever, for a status hearing. She admitted that she had used cannabis. This was her first violation. On July 5, 2017, at a status hearing, defendant admitted that she had used cannabis on June 30 and July 3. The court imposed a sanction of two days in jail. Defendant admitted that she lacked documentation for her attendance at several required counseling sessions, but she claimed to have attended all but one.

¶ 7    On March 26, 2018, the State petitioned to revoke defendant's participation in drug court. The State alleged that she tested positive for tetrahydrocannabinol (THC) on April 20, 2017, and

for THC and codeine on July 20, 2017; that she admitted using THC on June 22, 2017, and March 19, 2018; and that she missed drug tests on June 20, 2017, June 30, 2017, and March 14, 2018. On April 17, 2018, defendant asked to withdraw from the drug court program. The court granted her request but continued the conditions imposed under the program. The court continued the cause for sentencing and ordered the preparation of a presentencing investigation report (PSIR).

¶ 8    On June 26, 2018, the State filed the PSIR. As pertinent here, it stated as follows. Defendant was born September 5, 1980. Her criminal record was extensive though nonviolent, including numerous traffic offenses. In 2004, she was convicted of driving under the influence of alcohol (DUI), for which she received 12 months' probation. In 2006, she was convicted of driving while her license was revoked and sentenced to 30 months' probation. In 2008, her probation was revoked and she was sentenced to a year in prison. In 2011, she was convicted of aggravated DUI, a Class 2 felony, and was sentenced to three years in prison.

¶ 9    The PSIR stated that defendant had a 19-year-old daughter and an 11-year-old son, by different fathers. The son was residing with her for the summer. Defendant's mother lived in Dixon and had regular contact with her; defendant said that their relationship was good. Defendant's father lived in LaSalle and visited regularly; she described their relationship as good. Defendant was engaged. In 1998, she dropped out of high school. In 2000, she earned a GED. Defendant attended community college for two years and said that she needed 6-8 more credits for an associate's degree.

¶ 10   Defendant reported that her health was poor. She had had several heart attacks, the latest on June 14, 2018. She also had various digestive disorders and recently had foot surgery. She had received mental-health treatment since 1999, primarily for depression and substance abuse. She had withdrawn from treatment programs soon after entering them in 1999, 2003, and 2005, and

was hospitalized in 2010. Since starting drug court, defendant had been involved in treatment services with Sinnissippi Centers (SC) and had been diagnosed most recently with bipolar disorder and borderline personality disorder. She was taking numerous prescription drugs.

¶ 11     Defendant described herself as an alcoholic. She started drinking at age 10. At age 13, she began using marijuana daily, and at age 16 she began the occasional use of cocaine. Defendant reported that she was unemployed, had substantial student-loan debts, and relied on her fiancé for financial support. She had applied for disability benefits. Her only work experience was with two motels for about three months each, about three years before the PSIR was filed.

¶ 12     On May 1, 2019, the trial court held a sentencing hearing. The State introduced two exhibits: a printout describing the health-care facility at Logan Correctional Center and a series of posts from defendant's Facebook page, including photographs taken at a Cubs game that she had attended in a group outing to Milwaukee in early April 2019.

¶ 13     Dever testified as follows. She had been defendant's probation officer while defendant was in the drug court program. The program was specially designed for high-risk individuals. On March 14, 2018, defendant was unable to provide a urine screen. When Dever told her that it would be counted as a missed test, defendant responded that "she should just go buy a bag of weed since her drop would be dirty anyway." Defendant added that she never fully intended to give up marijuana; that she would return to using after she finished drug court; and that electing drug court was "just an easy way out." On April 17, 2018, defendant withdrew from drug court.

¶ 14     Dever testified that, since leaving the drug court program, defendant had not been monitored by the probation department. Standard probation does not include the same level of monitoring as in the drug court program. However, it would entail a prohibition on using illegal

drugs, enforced by drug screening. Based on defendant's past performance, Dever opined that she would not successfully complete a term of reporting probation.

¶ 15    Defendant testified as follows. She had congenital heart disease and now suffered from "heart failure." She wore a "LifeVest" that operated as a defibrillator in case her heart stopped. The vest used a charger that sent data through a cell phone. She had been wearing the vest for a year. A cardiac MRI performed approximately two weeks earlier showed that a stent in defendant's aorta had been slipping out of position.

¶ 16    Defendant testified that she also had hepatitis C, asthma, ulcers, chronic obstructive pulmonary disease (COPD), hemorrhaging hernias, and Barrett's esophagus. She identified a list of medicines that she was taking for depression and bipolar disorder, asthma, COPD, high cholesterol, heart disease, stomach disorders, high blood pressure, seasonal allergies, and the side effects of her antidepressants. She had had a heart attack about three months earlier. Defendant needed to schedule five medical appointments to address her hepatitis and for a general physical.

¶ 17    Defendant explained that her illnesses did not prevent her from attending the Cubs game, because she rode in a bus and sat in a wheelchair. She drank only nonalcoholic beverages. The game was early in April, in between two hospitalizations. She could not recall whether she notified any doctors of her trip. The bus trip was about 140 miles each way, and she felt very tired after returning.

¶ 18    The court admitted a letter from defendant's cardiologist, Dr. Sohail Hanif. The court admitted the letter into evidence. In the letter, dated April 29, 2019, Hanif summarized defendant's cardiac history. Defendant had congenital heart disease. In December 2017, she suffered an acute myocardial infarction that damaged her heart muscle. She later developed congestive heart failure. It is not uncommon for patients such as defendant to develop severe weakening of the heart muscle

without close supervision and monitoring. Hanif concluded, "It is my opinion that incarceration for such a sick individual, without access to proper, continuous medical care could quite likely have life-threatening consequences."

¶ 19    Defendant testified that, although she had once said that she would continue to use marijuana, she had changed her opinion because she realized that using marijuana was not good for her health or her legal situation. However, she had used edible cannabis within a week of the sentencing hearing, although she lacked a medical permit. Defendant did not recall having told Dever that she chose drug court because it was the easy way out.

¶ 20    Defendant testified that her heart problems limited her mobility and made doing chores and other daily activities difficult. She relied on a wheelchair much of the time. Defendant was awaiting more heart surgery: she needed a defibrillator, an implant for heart surgery, and close monitoring because the stent in her aorta was starting to slip.

¶ 21    The court heard the parties' sentencing requests. The State contended that defendant was a poor candidate for probation or conditional discharge, given that she had twice gone to prison after probation revocations and had been unsuccessful in drug court. Defendant's health was a problem, although her attendance at the Cubs game cast doubt on its severity. However, Logan had "state of the art" medical care for all inmates. The State recommended four years in prison.

¶ 22    Defendant contended that incarceration would seriously endanger her already fragile health. Defendant referred to Hanif's letter. There was no indication that defendant would be sent to Logan and, even if she were, it was not clear that she would be allowed to have her LifeVest connected to a cell phone. Also, she needed several surgeries.

¶ 23    Defendant addressed the court personally.  She said that the Logan medical facility was not tailored to her particular medical problems.  She had made all her weekly meetings with her drug therapist, Becky Johanning.

¶ 24    In pronouncing sentence, the court observed that there was little evidence of what medical care would be available at Logan, but there was substantial evidence, including Hanif's letter, that imprisonment would seriously threaten defendant's health.  The court sentenced defendant to four years' probation, with six months in jail to be stayed.  The court warned defendant, "You are at the end of your rope at this time.  If there is a positive test, there is a [petition to revoke probation] that goes on file, you will be facing prison because you're leaving me no other option."

¶ 25    On June 18, 2019, the State petitioned to revoke defendant's probation.  The petition alleged that, on June 14, 2019, defendant consumed alcohol and committed assault.  On July 3, 2019, the trial court held a hearing on the petition.

¶ 26    Dixon police officer Ryan Bivins testified as follows.  Early on the morning of June 14, 2019, while on patrol, he was driving through an alley in Dixon but was blocked by two apparently intoxicated people.  One of them was defendant.  Bivins did not speak with her then.  Shortly afterward, Bivins was dispatched to South Dement, where a woman reported that defendant and a man were inside a car, honking a horn.  The woman said that she had knocked on the window and asked them to stop, upon which she and defendant exchanged words.  Bivins spoke to defendant at the scene.  She was cooperative, but her breath smelled of an alcoholic beverage.  Later, defendant admitted that she had consumed "approximately five beers and [an unspecified number of] shots."  No field-sobriety or chemical tests were performed on her.

¶ 27    The trial court found that defendant had violated the conditions of her probation by consuming alcohol.  The court continued the cause for resentencing and ordered an update to the

PSIR. The update, filed July 17, 2019, stated in part that defendant resided with her son and her fiancé. She continued to receive mental-health therapy through SC, including weekly individual therapy, and was starting group treatment. Defendant admitted to "consistent relapses with alcohol and cannabis over the past year." She reported that she last used alcohol on June 14, 2019, and cannabis on June 12, 2019. She was attending Alcoholics Anonymous (AA) meetings twice weekly but had no sponsor. She was charged with assault based on the events of June 14, 2019.

¶ 28    The update included a letter from Johanning, dated July 8, 2019. Johanning reported that, since her initial assessment on August 10, 2016, defendant had been consistent with her appointments, most of which were conducted at her home owing to her health concerns and limited transportation. Respondent admitted that she had relapsed on alcohol and still had the desire to drink. She had returned to AA but was having trouble finding a sponsor because of her "past reputation" in AA. Respondent was struggling with alcohol and mental health. She was taking her various medicines regularly and was seeing her physician for medication management.

¶ 29    On July 30, 2019, the trial court held a resentencing hearing. Kyrstn McKean testified that she had been defendant's probation officer since May 1, 2019. Defendant admitted to testing positive for THC on her first drug test, taken May 17. She also admitted using cannabis again on May 25, 2019. Defendant had never tested positive for alcohol use. McKean opined that defendant was not a good candidate for continued probation. Given her arrest on June 14 and her continued cannabis use, defendant would "struggle on any term of probation." The court took judicial notice of the medical evidence admitted at the previous resentencing hearing.

¶ 30    The State recommended a new sentence of five years' imprisonment. Reviewing her criminal history and her failures in the drug court program and on conventional probation, the State

argued that defendant was a poor candidate for probation or conditional discharge. Moreover, Johanning's letter showed that defendant's prospects for successful treatment were not good.

¶ 31    Defendant requested the minimum prison term, three years. She emphasized that her health was extremely fragile, albeit partly because she had not protected it well. Nonetheless, as her cardiologist had opined earlier, a substantial prison term could pose a serious threat to her life.

¶ 32    The court sentenced defendant to five years in prison. The court noted that it had heretofore placed defendant on probation and given her "every opportunity to address her substance abuse issues, her mental health issues." Defendant had received "a lot of leniency over the years," including three months earlier, when the court gave her one more chance at probation. Because defendant had proven that probation was not suitable, there was no alternative to a prison sentence.

¶ 33    On August 24, 2019, defendant moved *pro se* to reduce her sentence, based on her health issues. Her counsel adopted the motion. At a hearing on the motion, held December 2, 2019, defendant testified in narrative form as follows. She regretted the actions that led to the revocation of her probation. However, incarceration had made it difficult to get the specialized medical attention that she needed, even though she was housed in a unit for medically disabled and handicapped inmates. The staff and other inmates had helped her learn to turn her life around.

¶ 34    The trial court noted that defendant had recently been given another opportunity to succeed on probation but soon failed. The court denied defendant's motion. She timely appealed.

¶ 35                                II. ANALYSIS

¶ 36    On appeal, defendant contends that her sentence is excessive in view of both her serious medical problems and her potential for rehabilitation. Defendant does not argue that the trial court considered any improper factors. She does not argue that the court erred in refusing to continue

her on probation, and she requests only that her prison term be reduced to three years, the statutory minimum.[1]

¶ 37    We may not disturb a sentence that is within the statutory range unless the trial court abused its broad discretion. *People v. Alexander*, 239 Ill. 2d 205, 212 (2010). We may not substitute our judgment for that of the trial court merely because we might have weighed the proper sentencing factors differently. *Id.* at 213; *People v. Stacey*, 193 Ill. 2d 203, 209 (2000). A sentence will be deemed an abuse of discretion only if it is greatly at variance with the spirit and purpose of the law or manifestly disproportionate to the nature of the offense. *Alexander*, 239 Ill. 2d at 212; *Stacey*, 193 Ill. 2d at 210.

¶ 38    Here, defendant's Class 2 offense had a sentencing range of three to seven years. 730 ILCS 5/5-4.5-35(a) (2018). Defendant's term was in the middle of this range. The trial court emphasized that defendant had repeatedly been granted leniency through probation but had consistently failed to take advantage of her opportunities to address the problems that had led to her latest conviction. This conclusion was all too well supported.

¶ 39    In August 2016, defendant was assigned to the drug court, a form of intensive probation tailored to her long-standing substance abuse disorders. Defendant violated the program's conditions several times. She used cannabis sometime before April 19, 2017, and again on June 30 and July 3, 2017. According to the State's March 2018 revocation petition, defendant also

---

[1] According to the Illinois Department of Corrections' website, the contents of which we may take judicial notice (see *People v. Sanchez*, 404 Ill. App. 3d 15, 17 (2010)), defendant's projected parole date is February 9, 2021. Therefore, the relief she requests is obviously unavailable.

tested positive for THC on April 20, 2017, and July 20, 2017, and admitted to having used THC on June 22, 2017, July 20, 2017, and March 19, 2018. She missed at least three drug tests as well. On April 17, 2018, defendant voluntarily withdrew from the program. According to her probation officer, she had a defeatist attitude and had entered the program only because she saw it as the "easy way out."

¶ 40 On standard probation, defendant was not monitored as closely as before but did admit to using edible cannabis without a permit within a week of May 1, 2019, the date of the sentencing hearing. At that time, the trial court gave her four years' probation. In so doing, the court warned defendant that she was at "the end of [her] rope" and that any violation would mean prison time.

¶ 41 Despite this clear warning, defendant violated probation, in no small way, less than two months later. On June 14, 2019, defendant admittedly drank five beers and an unspecified amount of another alcoholic beverage; she became intoxicated and engaged in antisocial conduct that led to her arrest for assault. At her next resentencing, the PSIR update recorded her as conceding that she had had "consistent relapses" in alcohol and drug use over the preceding year. Defendant even conceded that imprisonment for the statutory minimum, three years, was appropriate. The trial court imposed five years, still well short of the maximum. The court's decision was well rooted in the history of the case. Defendant's efforts toward rehabilitation were far from encouraging.

¶ 42 Defendant's inability to make progress in nearly three years outside custody was not the only factor that supported imposing more than the minimum sentence. In other respects, her rehabilitative prospects were poor. Defendant had no independent source of income and her employment history was minimal. She had some credits toward an associate's degree, but while this was an accomplishment to consider, its effect on her prospects was unclear. Defendant's

criminal record was substantial. Although her offenses were nonviolent, her two convictions of DUI showed her potential to endanger others because of her drinking and drug problems.

¶ 43 Finally, although defendant was convicted only of unlawful delivery of heroin, the parties agreed that her actions led to the death of the recipient. Thus, the class of her offense understated its seriousness, as causing death is obviously not an inherent element of unlawful delivery or even a routine one. The factual basis for her plea would have supported a conviction of drug-induced homicide, which carried a much higher sentencing range, 15 to 30 years' imprisonment. See 720 ILCS 5/9-3.3(c) (West 2014). By pleading guilty to the lesser charge, defendant initially received probation and ultimately, after numerous probation violations, received a sentence 10 years shorter than the maximum for an offense that was supported by the factual basis at the plea hearing.

¶ 44 Despite these considerations, defendant contends that her five-year sentence was beyond the trial court's wide discretion to impose. Defendant makes two arguments. One is that the court gave insufficient weight to her potential for rehabilitation. Defendant relies on her decision to plead guilty and thus take responsibility for her actions; her expressions of remorse; her good relationship with her parents; her steps toward furthering her education; and the nonviolent character of her previous offenses and their roots in her drug and alcohol problems.

¶ 45 What we have already noted is sufficient to dispose of this argument. The trial court considered defendant's potential for rehabilitation and gave it limited weight, for the good reasons we noted. The considerations she now raises did not compel the court to do otherwise. The positive aspects of defendant's background had been insufficient to prevent her from repeatedly violating the terms of her probation, relapsing into drug and alcohol use, and committing the acts that led to her prison sentence. Her expressions of remorse and promises to reform echoed those she had made for three years, and the court did not have to conclude that they would mean more

than previously. There was no evidence that her relationship with her parents or her efforts at education would be of any benefit in this respect.

¶ 46     Defendant's record was nonviolent, and many of her offenses were caused by substance abuse. But, as defendant concedes, a history of substance abuse is a "double-edged sword," because it may be taken as a reason for compassion or a sign of future dangerousness. *People v. Mertz*, 218 Ill. 2d 1, 83 (2005). A defendant's long history of substance abuse and criminal activity caused thereby may be an aggravating factor if it casts doubt on her prospects for avoiding further offending. *People v. Whealon*, 185 Ill. App. 3d 570, 574 (1985).

¶ 47     The other ground on which defendant relies is her poor health. Without a doubt, defendant has suffered severe health problems and will continue to do so. However, the trial court was aware of her poor health and the possible danger of incarcerating her in her condition. Indeed, the court initially exercised leniency on this exact basis in resentencing her to probation after she withdrew from drug court. However, after her probation was revoked, defendant conceded that, despite her ill health, a prison sentence was proper. In deciding to impose less than the maximum, the trial court gave defendant's medical needs considerable weight. We also note that the court had at least some evidence before it that Logan Correctional Center, where defendant has served her term, was relatively well equipped to address her special needs.

¶ 48     As the trial court did not abuse its sentencing discretion, we shall not disturb its decision.

¶ 49                                III. CONCLUSION

¶ 50     For the reasons stated, we affirm the judgment of the circuit court of Lee County.

¶ 51     Affirmed.